**UNITED STATES COURT OF APPEALS**
**for the Fifth Circuit**

_____

No. 93-2455
_____


DENTON ALAN CRANK,

                                        Petitioner-Appellant,

                    VERSUS


        JAMES A. COLLINS, Director,
    Texas Department of Criminal Justice,
          Institutional Division,

                                        Respondent-Appellee.


_____

     On Application for a Certificate of Probable Cause
 to Appeal an Order of the United States District Court
           for the Southern District of Texas
_____
                   (April 5, 1994)

Before KING, DAVIS, and WIENER, Circuit Judges.

DAVIS, Circuit Judge:

     Denton Alan Crank was convicted of capital murder for which
the death penalty was imposed.  The district court denied his
application for a Certificate of Probable Cause ("CPC"), and we
likewise deny his application for a CPC to appeal the district
court's order.

                              I.

     On January 16, 1984, Crank and another masked gunman abducted
Terry Oringderff from his apartment and took him to the Rice Cash
Saver's Store, where Oringderff was one of the managers.  After
robbing a number of the store employees, the gunmen forced

Oringderff and the courtesy booth operator to open the store's safes. The gunmen then left with the money and Oringderff, who was found later that day on a remote road in Houston, shot to death near his car.[1]

Crank was convicted of capital murder and sentenced to death. The Texas Court of Criminal Appeals affirmed his conviction and sentence. On October 2, 1989, the United States Supreme Court denied certiorari, and Crank's conviction became final.

Crank then applied for state habeas relief, which the state trial court recommended be denied. The Court of Criminal Appeals initially accepted the trial court's recommendation, but later granted rehearing to reconsider Crank's claim under **Penry v. Lynaugh**, 492 U.S. 302 (1989), only to deny him habeas relief on this claim in April 1992. Crank then filed a second state habeas petition alleging that his trial counsel had labored under a conflict of interest. In June 1993, the Court of Criminal Appeals accepted the state trial court's recommendation that habeas relief be denied on that ground as well.

On June 14, 1993, less than fifteen hours before his scheduled execution, Crank filed a petition for habeas relief in federal district court. His petition presented eighteen separate claims, along with a motion for a stay of execution and a request for a CPC. Later that day, the district court issued a memorandum opinion and order denying Crank's habeas petition, his motion for

---

[1] The details of the crime are more fully set forth in **Crank v. State**, 761 S.W.2d 328 (Tex. Crim. App. 1988), **cert. denied**, 493 U.S. 874 (1989).

a stay of execution, and his request for a CPC.  We granted a stay of execution to allow us sufficient time to consider Crank's appeal.  His application to this court for a CPC has been carried with the case.

## II.

We have no jurisdiction to hear an appeal in this case unless we first grant a CPC.  Fed. R. App. P. 22(b); **see Black v. Collins**, 962 F.2d 394, 398 (5th Cir.), **cert. denied**, 112 S.Ct. 2983 (1992). To obtain a CPC, Crank must make a substantial showing that he has been denied a federal right.  **See Barefoot v. Estelle**, 463 U.S. 880, 893 (1983).  He must "demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further."  **Id.** at 893 n.4 (internal quotations and citations omitted).  Applying this standard, we conclude that Crank is not entitled to a CPC to appeal the district court's order.

## III.

## A.

Crank contends first that Texas's capital sentencing scheme in effect at the time of his sentencing, Art. 37.071 of the Texas Code of Criminal Procedure, deprived him of the right to an individualized sentencing determination under **Penry v. Lynaugh**, 492 U.S. 302 (1989).  He makes two arguments:  (1) the jury could neither consider nor give mitigating effect to evidence of his background and character under the state's capital sentencing

3

statute; and (2) the statute precluded his counsel from developing and presenting mitigating evidence.

Crank's first point involves testimony from a former employer, a long-time friend, and family members regarding his positive character traits, including his trustworthiness, well-disciplined nature, caring and loving character, calm and non-violent personality, and family values. Crank argues that the jury was not able to give mitigating effect to this evidence because it was beyond the scope of, or not relevant to, the two special issues presented to the jury.[2] Crank contends that the state trial court's failure to provide the jury with an additional instruction authorizing the jury to give mitigating effect to this good character evidence violated his rights under the Eighth and Fourteenth Amendments as articulated in **Penry**.

Even if we were to accept Crank's argument, it would require us to announce a "new rule" under **Teague v. Lane**, 489 U.S. 288, 301 (1989), because the outcome requested by Crank was not dictated by precedent in existence at the time his conviction became final on October 2, 1989. Stated differently, if "reasonable jurists reading the case law in [October 1989] could have concluded that [Crank's] sentencing was <u>not</u> constitutionally infirm," **Teague**

---

[2] The jury was asked to determine: (1) whether the conduct of the defendant that caused the death of the deceased was committed deliberately and with the reasonable expectation that death would result; and (2) whether there was a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society. **See** Vernon's Ann. Texas C.C.P. art. 37.071(b)(1). The jury had to answer both questions in the affirmative for Crank to be sentenced to death.

4

precludes us from granting relief. **See Graham v. Collins**, 113 S.Ct. 892, 903 (1993). Thus, relief on Crank's **Penry** claim is barred by **Teague**'s non-retroactivity limitation.

Crank's claim fares no better on the merits. So long as the proffered mitigating evidence is within "the effective reach of the sentencer," the Eighth Amendment is satisfied and supplemental mitigation instructions are not constitutionally required. **See Johnson v. Texas**, 113 S.Ct. 2658, 2669 (1993). The evidence of Crank's good character tended to show that his crime was an aberration, which would have supported a negative answer to the second special issue. **See Graham**, 113 S.Ct. at 902. Indeed, at the punishment hearing, Crank's counsel argued that the evidence of Crank's good character reflected that he would not commit future violent criminal acts:

> What I brought you by way of evidence at this hearing is the testimony of . . . a number of good people who have known Denton Crank in many instances all of his life, all of whom have known him for years. . . . And those people are telling the truth when they say that he's not a violent man, that he's good to his family, that he's good to his wife, that he loves them and that they love him back. And that's not the kind of man who probably would continue to commit criminal acts of violence that would constitute a threat to society.

Because the jury was able to give mitigating effect to this evidence, Crank's **Penry** claim also fails on the merits.

Crank argues next that his rights under the Sixth, Eighth, and Fourteenth Amendments were infringed because the Texas capital sentencing statute precluded counsel from developing and presenting mitigating evidence. According to Crank, evidence pertaining to his background, including child abuse and neurological damage

5

stemming from a brain aneurysm, either would have been irrelevant to the special issues or would have been considered only as aggravating evidence. He contends that, as a result, he was effectively precluded from presenting this evidence. We find this argument meritless.

We must also reject Crank's second **Penry** argument - that the Texas statute precluded him from developing and presenting mitigating evidence. We have held that a federal habeas petitioner cannot base a **Penry** claim on evidence that could have been, but was not, proffered at trial. **See Barnard v. Collins**, 958 F.2d 634, 637 (5th Cir. 1992), **cert. denied**, 113 S.Ct. 990 (1993). As Crank admits in his brief, and as the state trial court found in reviewing Crank's habeas petition, Crank's trial counsel made a tactical decision not to offer evidence that Crank was abused as a child and that he suffered a leaking brain aneurysm which caused neurological damage.

The addition of a Sixth Amendment gloss to this contention does not help. Even if Texas's sentencing scheme caused Crank's trial counsel to make tactical decisions which he might not otherwise have made, this does not amount to unconstitutional government interference with counsel's ability to conduct the defense of a case. **See May v. Collins**, 948 F.2d 162, 167-68 (5th Cir. 1991) (If every substantive criminal statute and death penalty statute triggered the rule against government interference with counsel's ability to conduct a defect, "that rule would be virtually unlimited and would convert every criminal statute and

6

capital sentencing scheme into a predicate for a Sixth Amendment claim for ineffective assistance of counsel."), **cert. denied**, 112 S.Ct. 907 (1992).  For the reasons stated above, Crank's **Penry** claim lacks arguable merit.

## B.

Finally, Crank argues that he did not knowingly and intelligently waive his Sixth Amendment right to conflict-free counsel.  In **United States v. Garcia**, 517 F.2d 272, 278 (5th Cir. 1975), we established that a valid waiver of a defendant's Sixth Amendment right to conflict-free counsel requires:  (1) that the defendant be aware that a possible conflict of interest exists; (2) that the defendant realize the consequences to his defense that continuing with conflicted counsel would have; and (3) that the defendant be aware of his right to obtain other counsel.

The facts underlying Crank's claim are undisputed.  Crank's original trial counsel, Bob Tarrant, concurrently represented another suspect in the murder for which Crank was ultimately convicted.[3]  After Crank appeared in state court with Tarrant and pled not guilty, the court identified the conflict of interest and explained to Crank that he could waive the conflict.  When Crank indicated that he was not sure that he understood the situation, he conferred with Tarrant.  The court then recessed to allow Crank to

---

[3]    Tarrant represented Bobby Bartoo on an unrelated robbery charge.  Bartoo also was a suspect in the January 16, 1984 robbery; a witness had identified Bartoo as the masked gunman.  Tarrant therefore would have had to defend one client (Crank) by implicating another (Bartoo) in the capital murder of Oringderff.

7

confer with his family and his family's civil attorney before making any decision.

More than a week later, at a pretrial hearing, Crank appeared with Don Ervin, his newly-retained counsel, and the court resumed its discussion with Crank concerning counsel's potential conflict of interest. The court asked Crank whether he wanted Ervin to replace Tarrant as his attorney and whether he understood that Ervin and Tarrant were law partners. Crank responded affirmatively. The court also asked whether Crank understood that a possible conflict of interest existed because of Ervin and Tarrant's relationship. After conferring with Ervin off the record, Crank again responded affirmatively. The court then explained what it meant to waive the right to conflict-free counsel, and Crank agreed to the waiver.

The state court reviewing Crank's habeas petition found that he understood his rights and the potential conflict, and that he made a knowing and intelligent decision to be represented by Mr. Ervin. The record amply supports these findings, and the district court properly accorded them a presumption of correctness. **See** 28 U.S.C. § 2234(d). We therefore conclude that Crank's right-to-conflict-free-counsel claim lacks arguable merit.

IV.

Because Crank has failed to demonstrate that the issues he presents are debatable among jurists of reason, his application for a CPC is DENIED, and the stay of execution previously entered is VACATED.

8