**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 95-20752

_____


JOHN ALEX HALLMARK,

Petitioner-Appellant,


VERSUS


GARY L. JOHNSON, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL JUSTICE, INSTITUTIONAL DIVISION,

Respondent-Appellee.


_____

No. 95-20869

_____


TERRENCE R. SPELLMON,

Petitioner-Appellant,


VERSUS


GARY L. JOHNSON, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL JUSTICE, INSTITUTIONAL DIVISION,

Respondent-Appellee.


_____

No. 95-21050

_____


WALTER JOSEPH THIBODEAUX,

Petitioner-Appellant,

VERSUS

GARY L. JOHNSON, DIRECTOR, TEXAS DEPARTMENT OF
CRIMINAL JUSTICE, INSTITUTIONAL DIVISION,

Respondent-Appellee.

_____

No. 96-20115

_____

KENNETH GREGORY THOMPSON, JR.,

Petitioner-Appellant,

VERSUS

GARY L. JOHNSON, DIRECTOR, TEXAS DEPARTMENT OF
CRIMINAL JUSTICE, INSTITUTIONAL DIVISION,

Respondent-Appellee.

_____

No. 96-20587

_____

RODNEY J. GIBSON,

Petitioner-Appellant,

VERSUS

GARY L. JOHNSON, DIRECTOR, TEXAS DEPARTMENT OF
CRIMINAL JUSTICE, INSTITUTIONAL DIVISION,

Respondent-Appellee.

_____

No. 96-20901

LUCRECIA LYNN MONROE, also known as Lucretia Lynn Monroe,

Petitioner-Appellant,

VERSUS

GARY L. JOHNSON, DIRECTOR, TEXAS DEPARTMENT OF
CRIMINAL JUSTICE, INSTITUTIONAL DIVISION,

Respondent-Appellee.

Appeals from the United States District Court
For the Southern District of Texas

--------------------------------------------------------------

No. 95-50531

DANNY LEON LUCAS,

Plaintiff-Appellant,

VERSUS

WAYNE SCOTT, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL
JUSTICE, INSTITUTIONAL DIVISION; CHARLES VANCE, JR.,
Chairman of the Texas Board of Criminal Justice,

Defendants-Appellees.

No. 96-50140

RUBEN A. RODRIGUEZ,

Petitioner-Appellant,

VERSUS

GARY L. JOHNSON, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL JUSTICE, INSTITUTIONAL DIVISION,

Respondent-Appellee.

---

Appeals from the United States District Court
For the Western District of Texas

---

July 25, 1997

Before JOLLY, JONES, and PARKER, Circuit Judges.

PARKER, Circuit Judge:

In this consolidated appeal, the appellants present a common issue: whether the Texas Board of Criminal Justice's 1993 directive eliminating the Director of Pardons and Paroles' discretion to restore good time credits previously forfeited for disciplinary violations constituted a violation of the *Ex Post Facto* Clause when applied to prisoners with forfeited good time credits at the time of the directive.  Finding no violation of the Constitution's *ex post facto* prohibition, we affirm the various district courts on this issue.  Four appellants also present individual claims. Finding all of these to be without merit, we affirm the district courts on these claims as well.

## I.  FACTUAL AND PROCEDURAL HISTORY

Beginning in 1977, Texas state law vested discretion in the

4

Director of Pardons and Paroles ("Director") to forfeit good time credits for prison rule violations and also gave the Director the discretion to restore such forfeited good time credits.[1]  The Texas Legislature amended the statute in 1987, adding the following provision that allowed the Texas Board of Criminal Justice ("TBCJ") to adjust its policy on restoration of good time credits in relation to prison overcrowding.

> At least annually, the Texas Board [of Criminal Justice] shall review the department's rules and policies relating to restoration of good conduct time that has been forfeited and in awarding additional good conduct time retroactively to inmates who have been reclassified.  The board shall consider in its review whether the inmate overcrowding in the department has decreased and whether it is necessary for purposes of deceasing the overcrowding to restore good conduct time or award additional good conduct time retroactively to inmates who have been reclassified.  If the board determines that overcrowding has decreased and it is not necessary to restore good conduct time or award additional good conduct time, it shall direct the department to discontinue those practices.

Tex. Civ. Stat. Ann. art. 6181-1 § 4 (West 1988).  Thus, if the TBCJ determined that there was a decrease in overcrowding, it could direct the Texas Department of Criminal Justice to discontinue the restoration of good time credits.

In 1993, the TBCJ issued a "Notice to Inmate Population" dated

---

[1]  The statute read as follows.

Good conduct time is a privilege and not a right.  Consequently, if during the actual term of imprisonment in the department, an inmate commits an offense or violates a rule of the department, all or any part of his accrued good conduct time may be forfeited by the director.  The director may, however, in his discretion, restore good conduct time forfeited under such circumstances subject to rules and policies to be promulgated by the department.

Tex. Civ. Stat. Ann. art. 6181-1 § 4 (West 1979).

November 12, 1993 ("the 1993 directive") which stated the following.

> Effective November 20, 1993, the Texas Department of Criminal Justice--Institutional Division will discontinue the restoration of good conduct time forfeited as a result of disciplinary violations. This change in policy applies to good conduct time that is currently forfeited or that is forfeited in the future due to disciplinary rule violations. This means that any lost good time that was not restored as of November 20 will be permanently forfeited.

The directive was enforced as announced.

The appellants appeal to this court following denials of their habeas petitions by the district courts. The appellants argue that the change in policy which eliminated the Director's discretion to restore their forfeited good time credits violates the Constitution's *ex post facto* prohibition. Various individual claims are also asserted.

## DISCUSSION

### A. Certificates of Appealability

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. 104-132, 110 Stat. 1214, amended 28 U.S.C. § 2253 to require a certificate of appealability ("COA") before an appeal may proceed in a § 2255 or a § 2254 action. Following the Supreme Court's decision in *Lindh v. Murphy*, -- U.S. --, -- S. Ct. --, -- L. Ed. 2d --, 1997 WL 338568 (June 23, 1997), we held that § 2254 petitioners are subject to the AEDPA's COA requirement only when a § 2254 petition is filed in the district court after the AEDPA's effective date of April 24, 1996. *United States v. Carter*, -- F.3d --, 1997 WL 374754, *4 n.1 (5th Cir. July 8, 1997). As an initial matter, we must address whether the various appellants in

6

this case have conformed to any applicable COA requirements. For § 2254 petitioners not subject to the AEDPA's new COA requirement, its predecessor, the certificate of probable cause ("CPC"), remains in effect as a prerequisite to our jurisdiction. *See, e.g., Sterling v. Scott*, 57 F.3d 451, 453 (5th Cir. 1995).

We must examine the various appellants' cases' chronologies to determine if an appellant requires a COA or a CPC. Then, we must ascertain if each appellant has met the applicable prerequisites for our jurisdiction.

## 1. John Hallmark ("Hallmark")

The district court's final judgment denying Hallmark's § 2254 motion was entered on August 21, 1995 and Hallmark filed his notice of appeal on September 13, 1995. Thus, the AEDPA's new COA requirement does not apply to Hallmark and its predecessor, the CPC, remains in effect for his appeal. The district court denied Hallmark's application for a CPC in November 1995. We construe Hallmark's notice of appeal as a request for the issuance of a CPC. *See* Fed. R. App. P. 22(b) (1995).

Unless we grant a CPC, we have no jurisdiction to hear an appeal from a denial of habeas relief. *Sterling v. Scott*, 57 F.3d 451, 453 (5th Cir. 1995). To obtain a CPC, Hallmark must make a substantial showing that he has been denied a federal right. *Barefoot v. Estelle*, 463 U.S. 880, 893, 103 S. Ct. 3383, 3394-95, 77 L. Ed. 2d 1090 (1983). This standard does not require Hallmark to demonstrate the he would prevail on the merits but it does require him to "demonstrate that the issues are debatable among

7

jurists of reason; that a court could resolve the issues [in a different manner]; or that questions are adequate to deserve encouragement to proceed further." *Crank v. Collins*, 19 F.3d 172, 174 (5th Cir. 1994) (quoting *Barefoot*, 463 U.S. at 893 n.4 and omitting internal quotations and citations)). Applying this standard, we grant Hallmark's application for a CPC. *See Newby v. Johnson*, 81 F.3d 567, 569 n.1 (5th Cir. 1996) (holding that challenge to credit issued for time served while on parole arises out of process issued by state court and is thus properly addressed under § 2254).

**2.   Terrence Spellmon ("Spellmon")**

The district court entered final judgment dismissing Spellmon's habeas petition on September 14, 1995. Spellmon filed a notice of appeal on October 18, 1995. The district court denied a CPC and this court subsequently granted Spellmon a CPC on April 1, 1996.

**3.   Walter Joseph Thibodeaux ("Thibodeaux")**

The district court entered final judgment dismissing Thibodeaux's habeas petition on November 11, 1995. Thibodeaux filed his notice of appeal on December 6, 1995. The district court denied Thibodeaux a CPC and this court subsequently granted Thibodeaux a COA on the *ex post facto* issue. Following *Lindh*'s holding that the AEDPA's amendments to the chapter of Title 28 containing the COA requirement are not retroactively effective, we now consider Thibodeaux's appeal under the predecessor CPC standard which did not involve the specification or limitation of issues

8

upon which it was granted. *See Muniz v. Johnson*, 114 F.3d 43, 45 (5th Cir. 1997). Having already considered at least one of Thibodeaux's issues to merit a COA, we grant a CPC for his appeal since we have previously explained that the showing required for both the COA and the CPC is the same. *See United States v. Youngblood*, -- F.3d --, 1997 WL 355356 (5th Cir. June 27, 1997); *Muniz*, 114 F.3d at 45.

**4. Kenneth Gregory Thompson, Jr. ("Thompson")**

After dismissing Thompson's habeas petition, the district court denied Thompson a CPC on April 4, 1996. Thompson was subsequently granted a COA on the *ex post facto* issue. We now grant a CPC for his appeal.

**5. Rodney J. Gibson ("Gibson")**

Gibson filed his habeas petition in the district court on August 9, 1995. The district court entered final judgment dismissing Gibson's habeas petition on June 13, 1996. Gibson was granted a COA on his *ex post facto* issue. We now grant a CPC for his appeal.

**6. Lucrecia Lynn Monroe ("Monroe")**

Monroe filed her § 2254 petition in the district court on June 19, 1995. The district court dismissed her habeas petition and subsequently denied Monroe a CPC. Monroe was granted a COA on her *ex post facto* issue. We now grant a CPC for her appeal.

**7. Danny Leon Lucas ("Lucas")**

The district court entered final judgment dismissing Lucas's habeas petition and civil rights claims on June 26, 1995. Lucas

9

filed a notice of appeal on July 10, 1995. Given such a chronology, the AEDPA's COA requirement does not apply and the former CPC requirement remains in effect for Lucas. The district court neither granted nor denied Lucas a CPC. Because a CPC is a prerequisite to our jurisdiction in a § 2254 action, we must dismiss this appeal for lack of jurisdiction and remand for the district court's consideration of a CPC. *See* Fed. R. App. P. 22(b) (1995); *Crank v. Collins*, 19 F.3d 172, 174 (5th Cir. 1994).

**8. Ruben Rodriguez ("Rodriguez")**

After the district court denied habeas relief on January 31, 1996, Rodriguez filed a timely notice of appeal and the district court granted a CPC.

## B. The *Ex Post Facto* Claim

The appellants allege that the 1993 directive removing the director's discretion to restore forfeited good time is a violation of the Constitution's *ex post facto* prohibition in that it eliminated the possibility of their forfeited good time credits being restored. *See* U.S. Const. art. I, § 10 ("No state shall...pass any...*ex post facto* Law"). They argue that the 1993 directive increases their punishment burden after sentencing because under the old scheme, it was possible that they would have obtained an earlier release than under the new scheme. The state offers that good time credits only affect eligibility for parole and mandatory supervision and because good time credits do not affect the length of the sentence as imposed and the Director has always had the discretion not to restore forfeited good time

10

credits, the directive did <u>not</u> create a more burdensome punishment.

The imposition of a punishment more severe than that assigned by law when the criminal act occurred is a violation of the Constitution's *ex post facto* prohibition. *Weaver v. Graham*, 450 U.S. 24, 30, 101 S. Ct. 960, 964, 67 L. Ed. 2d 17 (1981). In order to amount to an *ex post facto* violation, a change must be both retroactive and to a prisoner's detriment. "[T]wo critical elements must be present for a criminal or penal law to be *ex post facto*: it must be retrospective, that is, it must apply to events occurring before its enactment, and it must disadvantage the offender affected by it." *Id.* at 29.

The central issue of our *ex post facto* inquiry is whether the 1993 directive effectively increased or made more burdensome the appellants' punishment.[2] *See Lynce v. Mathis*, -- U.S. --, 117 S. Ct. 891, 37 L. Ed. 2d 63 (1997) (question presented was whether consequences disadvantaged petitioner by increasing his punishment). We must decide if the change disadvantaged the prisoners affected by it to a degree of *ex post facto* significance. *Cal. Dep't of Corrections v. Morales*, -- U.S. --, --, 115 S. Ct 1597, 1603, 131 L. Ed. 2d 588 (1995). "In evaluating the

---

[2]   We note that the Supreme Court held in *Lindh v. Murphy*, -- U.S. --, -- S. Ct. --, -- L. Ed. 2d --, 1997 WL 338668 (June 23, 1997), that the review provisions for habeas cases set out by the AEDPA in 28 U.S.C. § 2254(d) are not to be applied retroactively to cases pending at the time of the AEDPA's effective date. *Lindh* overruled our earlier pronouncements in this area, namely *Drinkard v. Johnson*, 97 F.3d 751 (5th Cir. 1996), *cert. denied*, -- U.S. --, 117 S. Ct. 1114, 137 L. Ed. 2d 315 (1997), and subsequent decisions regarding the application of § 2254(d). Accordingly, our review is conducted without reference to the provisions set out in amended § 2254(d).

11

constitutionality...we must determine whether it produces a sufficient risk of increasing the measure of punishment attached to the covered crimes."  *Id.*

In *Weaver v. Graham*, the Supreme Court held that a statute unilaterally reducing the amount of good time credits that a prisoner could earn to reduce his sentence was barred by the *ex post facto* prohibition.  In *Lynce v. Mathis*, the Court held that the retroactive cancellation of early release credits already awarded to state prisoners increased the prisoners' punishment so as to constitute an *ex post facto* violation.  117 S. Ct. 891.  This case is distinct from *Weaver* and *Lynce* in that it does not present a retroactive denial of an <u>opportunity</u> to reduce a prison sentence, nor does it involve the cancellation of good time credits already earned by prisoners.  The 1993 directive did not retract already accumulated good time credits and the appellants in this case were not denied an opportunity to earn good time credits.  In fact, they have retained the opportunity to earn just as many good time credits as they could on the day that they committed their crimes.  The only change enacted by the 1993 directive was that upon loss of good time credits as a result of disciplinary infractions, there was no longer a possibility of those good time credits being restored.

Although a "speculative, attenuated risk of affecting a prisoner's actual term of confinement" may exist, that fact does not answer an *ex post facto* inquiry.  *Morales*, 115 S. Ct at 1603.  The question of this constitutional transgression has long been "a

12

matter of degree." *Id.* (citation and quotations omitted). While the Supreme Court has declined to articulate a dividing line for identifying those changes that have a sufficient effect on substantive crimes or punishments to fall within the *ex post facto* prohibition, the Court has explained that "speculative," "attenuated" and "conjectural" effects are insufficient under any threshold that it might establish for *ex post facto* violations. *Id.* In *Morales*, the Court found that the California legislation at issue created "only the most speculative and attenuated risk of increasing the measure of punishment attached to the covered crimes," *Id.* at 1605, and thus presented no *ex post facto* violation. *See also Lynce*, 117 S. Ct. at 898 n. 16 ("Simply put, we rejected the inmate's claim in *Morales*, because it could not be said with any certainty that the amended statutory scheme was more 'onerous' than at the time of the crime.").

We regard the Texas legislation at issue as also presenting only a speculative possibility of increasing the appellants' terms of confinement. In contrast to *Weaver*, the appellants were, as already stated, not deprived of the opportunity to obtain an early release. The appellants were deprived only of the opportunity to have forfeited good time credits restored and only if (1) they committed a prison violation, (2) discretion was exercised to forfeit some of their good time credits because of the rule infraction, and (3) they would have, under the earlier discretionary scheme, had those good time credits restored. In other words, while the opportunity to earn early release was

13

constricted to some degree, it was only if there was a disciplinary problem, a discretionary exercise of forfeiture was exercised, <u>and</u> the prisoner would have had the good time credits restored under the previous discretionary restoration scheme. Such is too attenuated and speculative to constitute an ex post facto violation. *Cf. Hamm v. Latessa*, 72 F.3d 947, 948 (1st Cir. 1995) (finding risk of increased punishment too speculative where earlier release depended on an unlikely series of events and it was still possible that prisoner would have had a later release under old scheme), *cert. denied*, -- U.S. --, 117 S. Ct. 154, 136 L. Ed. 2d 99 (1996). The fact that there was always a possibility to lose earned good time credits as a result of a disciplinary violation and <u>never</u> have them restored makes it clear that the 1993 directive did not increase the appellants' punishment. As the California Supreme Court explained, "[t]here is a critical difference between a diminution of the ordinary rewards for satisfactory performance of a prison sentence---the issue in *Weaver*--and an increase in sanctions for future misbehavior in prison--which is at issue here." *In re Ramirez*, 705 P.2d 897, 901 (Cal. 1985). The 1993 directive did not substantially alter the consequences attached to a crime already completed, and thus it did not change the quantum of punishment such that it is unconstitutional. *Cf. Weaver*, 450 U.S. at 33.

Finally, we note that a critical element of an *ex post facto* violation is an absence of forewarning, that is, that the change is unexpected. As the Supreme Court has explained, "critical to

14

relief under the *ex post facto* Clause is not an individual's right to less punishment, but <u>the lack of fair notice and governmental restraint</u> when the legislature increases punishment beyond that what was perceived when the crime was consummated." *Weaver*, 450 U.S. at 30 (emphasis added). The Director of Pardons and Parole has had the power since 1977 to decline to restore, <u>at his discretion</u>, good time credits forfeited for prison violations, *see* Tex. Civ. Stat. Ann. art. 6181-1 § 4 (West 1979), and so there was indeed fair warning of the possibility of forfeiture of good time credits and the consequences thereof.

We find that no violation of the *Ex Post Facto* clause occurred.

### C.   Individual Claims

### 1.   Deprivation of Liberty Interest without Due Process Claim

Thibodeaux,[3] Monroe and Rodriguez argue that prisoners have a protected liberty interest in the restoration of good time credits and that they were deprived of their protected liberty interest without due process, as required by the Fourteenth Amendment's Due Process Clause.

This argument fails as the appellants lack the liberty interest that they assert. Since 1977, Texas law has provided that

---

[3]   Thibodeaux also presents a contention that he has suffered retaliation in the parole process as a result of his status as a recognized "writ-writer." He did not present this claim to the district court, nor to the state habeas court, and thus we cannot consider it for the first time in this court. *See Yohey v. Collins*, 985 F.2d 222, 226 (5th Cir. 1993); *Hulsey v. Texas*, 929 F.2d 168, 172 (5th Cir. 1991). We have considered only his contentions related to the 1993 directive as they were the only issues before the district court.

15

good conduct time credits are "a privilege and not a right." Tex. Civ. Stat. art. 6181-1 § 4 (West 1988). Since 1977 and up until the 1993 directive, Texas prison authorities possessed the discretion to restore or not to restore forfeited good conduct time credits. Tex. Civ. Stat. art. 6181-1§ 4 (West 1988) ("The director may, however, in his discretion, restore good conduct time forfeited under such circumstances subject to rules and policies to be promulgated by the department.").

Because the state statutes have, since at least 1977, vested complete discretion with the state correctional authorities on the issue of restoration of good time credits forfeited for disciplinary infractions, there is no protected liberty interest in the restoration of good time credits and this argument fails. *See Greenholtz v. Inmates of Neb. Penal and Correctional Complex*, 442 U.S. 1, 11, 99 S. Ct. 2100, 2105, 60 L. Ed. 2d 668 (1979) (a statute which "provides no more than a mere hope that the benefit will be obtained...is not protected by due process"); *Hamill v. Wright*, 870 F.2d 1032, 1036-37 (5th Cir. 1989) (no liberty interest in award of good conduct time credits where state authorities possessed complete discretion concerning the award of such credits); *Ex parte Montgomery*, 894 S.W.2d 324, 328-29 (Tex. Crim. App. 1995) (policy of discretionary restoration of forfeited good time credits did not create a protected liberty interest); *see also Board of Pardons v. Allen*, 482 U.S. 369, 378 n. 10, 107 S. Ct. 2415, 2421 n.10, 96 L. Ed. 2d 303 (1987) ("statutes or regulations that provide that a parole board 'may' release an inmate on parole

16

do not give rise to a protected liberty interest"); *Allison v. Kyle*, 66 F.3d 71, 74 (5th Cir. 1995) (Texas parole statutes do not create a protected liberty interest due to discretionary nature).

## 2. Spellmon's Due Process Claims

Spellmon alleges that he was denied due process during a prison disciplinary hearing which resulted in the forfeiture of good time credits. Specifically, he alleges that he was not given adequate notice of the charges and was denied the right to cross-examine a witness.

Under *Wolff v. McDonnell*, 418 U.S. 539, 564-65, 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974), disciplinary action resulting in an inmate's loss of good time credit must be accompanied by certain procedural safeguards, including written notice of the charges at least 24 hours before a hearing regarding disciplinary sanctions. *See Murphy v. Collins*, 26 F.3d 541, 543 & n.5 (5th Cir. 1994). The disciplinary charge against Spellmon involved a conspiracy to create a work stoppage. Spellmon contends that he should have been notified of his alleged co-conspirators' names because without such information he could not properly prepare a defense. However, he does not explain how the lack of that piece of information was prejudicial to the preparation of his defense and thus his argument on this issue fails. *See Simpson v. Ortiz*, 995 F.2d 606, 609 (5th Cir. 1993) (a prerequisite to issuance of a writ of habeas corpus is showing of prejudice as a result of alleged constitutional violation).

Spellmon also claims a due process problem in being prevented

17

from cross-examining the warden at the hearing with a particular question. The transcript of the hearing is not in the record before us, but even if it revealed that the warden was in fact not allowed to answer the question posed by Spellmon, Spellmon has not demonstrated that he was denied a procedurally adequate hearing. In *Wolff*, the Supreme Court held that confrontation and cross-examination of witnesses is not required in prison disciplinary hearings. 418 U.S. at 567-68.

Spellmon also contends that he was denied due process by the Texas state courts' policy against considering challenges to prison disciplinary proceedings in state habeas proceedings. Insofar as Spellmon raises a due process challenge to the state habeas proceedings, his claim fails because infirmities in state habeas proceedings do not constitute grounds for relief in federal court. *See Duff-Smith v. Collins*, 973 F.2d 1175, 1182 (5th Cir. 1992).

### III. CONCLUSION

For the foregoing reasons, we AFFIRM the various district courts as to the *ex post facto* claim. We have reviewed all of the appellants' individual contentions, and we AFFIRM the district courts as to those claims as well. In the case of Lucas, we DISMISS his appeal for lack of jurisdiction and REMAND for the district court's consideration of his CPC application.