In the
United States Court of Appeals
For the Seventh Circuit

No. 00-4032

Shelby Moffat,

Petitioner-Appellant,

v.

Edward Broyles,

Respondent-Appellee.

Appeal from the United States District Court
for the Northern District of Indiana, South Bend Division.
No. 3:00-CV-338 AS--Allen Sharp, Judge.

Argued April 19, 2002--Decided April 30, 2002

   Before Bauer, Posner, and Easterbrook,
Circuit Judges.

   Easterbrook, Circuit Judge.  Shelby Moffat
lost 180 days of good-time credits after
a disciplinary committee concluded that
he had attempted to smuggle two pieces of
jewelry into the prison. Immediately
after seeing a visitor in an interview
room, Moffat asked to use the bathroom;
suspicions raised, the officers sent him
to the shakedown room instead and caught
him attempting to discard a paper towel
containing a gold chain and a silver
chain. Moffat's defense was that he owned
the jewelry and had worn it into the
visiting room; he offered as evidence
receipts for some authorized jewelry
purchases. He did not explain, however,
why--if he owned these pieces
legitimately and had been wearing them at
the start of the visit--he put the chains
in a paper towel and tried to conceal
them from the guards. Prison authorities
drew an adverse inference and found him
guilty of attempted trafficking. Moffat
contends in this proceeding under 28
U.S.C. sec.2254 that the state violated
his constitutional rights by acting
without sufficient evidence and by making
a decision without a concrete statement
of reasons. The district court denied his
petition.

   Neither the district judge nor any judge

of this court has issued a certificate of appealability, which raises the question how we can entertain this appeal given 28 U.S.C. sec.2253(c)(1)(A), which provides: "Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from . . . the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court". This is a habeas corpus proceeding, and Moffat's imprisonment arises out of (= is authorized by) a state court's process (= his sentence). We held in Walker v. O'Brien, 216 F.3d 626, 638 (7th Cir. 2000), that a certificate of appealability nonetheless is unnecessary because the prison's disciplinary apparatus is not a state court. That decision created a conflict by departing from the approach of the fifth and tenth circuits. Montez v. McKinna, 208 F.3d 862, 867 (10th Cir. 2000); Stringer v. Williams, 161 F.3d 259, 262 (5th Cir. 1998); Hallmark v. Johnson, 118 F.3d 1073, 1076-77 (5th Cir. 1997).

Since Walker's announcement, three more circuits have addressed this issue--and all three have rejected Walker's holding, making the score five to one against our position. See Coady v. Vaughn, 251 F.3d 480, 486 (3d Cir. 2001); Greene v. Tennessee Department of Corrections, 265 F.3d 369, 371-72 (6th Cir. 2001); Madley v. United States Parole Commission, 278 F.3d 1306, 1309-10 (D.C. Cir. 2002). Coady appears to have been unaware of Walker, but Greene and Madley dealt with it directly, disapproved both its reasoning and its outcome, and held that "the detention complained of arises out of process issued by a State court" for purposes of sec.2253(c)(1) whenever the appellant's imprisonment has been judicially authorized. Not a single judge in any other circuit has adopted the view taken in Walker that sec.2253(c)(1) is inapplicable to collateral attacks on administrative decisions that affect how much of a judicially imposed sentence shall be served. As these opinions observe, Walker reaches a counter-textual conclusion: sec.2553(c)(1) asks whether the detention arises out of a state court's process, while Walker asks whether the challenged decision was made by a state court. In order to hold that a collateral attack was possible under

sec.2254 (which it did), the panel in Walker had to hold that the detention arose out of a state court's decision, but the panel then denied that a certificate of appealability was necessary. This internal contradiction, coupled with Walker's unfavorable reception, poses the question whether this circuit should continue to walk a lonely path. See United States v. Carlos-Colmenares, 253 F.3d 276 (7th Cir. 2001).

Still, it is never necessary to revisit a subject sua sponte--even if it deals, as Walker does, with appellate jurisdiction--unless an intervening decision of the Supreme Court has overthrown circuit precedent. Walker did not reach its conclusion in passing or as a result of inadequate consideration; it resolved the issue directly and over a vigorous dissent. Other circuits have not turned up new arguments but instead have aligned themselves with what was a dissenting view in this circuit. It may be that developments elsewhere will affect how judges here see the question, but because Indiana has not asked us to take a fresh look at the question, Moffat's lawyer has not briefed the subject either. We shall proceed to decide the case as it was presented, but with the caveat that this court is not indifferent to the reception its legal conclusions receive in other circuits and may find it necessary to decide eventually whether to eliminate or perpetuate this conflict.

One of Moffat's arguments is that the evidence does not prove that he attempted to smuggle jewelry into the prison. He came out of the interview with three chains (two discarded in the paper towel and a third found on a window ledge) but could have been wearing all three going in. Guards saw him wearing one; maybe they missed the other two, Moffat insists. He has receipts for some chains and insists that the prison had to establish that these were not the chains that he possessed following the interview. That would be impossible; the receipts are not detailed enough to exclude the possibility that the chains in the paper towel had been purchased earlier. Thus he was entitled to vindication, Moffat concludes. But a prison need not show culpability beyond a reasonable doubt or credit exculpatory

evidence. It is enough, as far as the federal Constitution is concerned, if "some evidence" supports the disciplinary board's conclusion. See Superintendent of Walpole v. Hill, 472 U.S. 445 (1985). Guards saw one chain going in and found three coming out; eyesight and memory can play tricks, but they are reliable enough to support criminal convictions and thus are reliable enough to support administrative decisions too. That Moffat tried to ditch two chains implies that he had something to hide, which strengthens the inference that they had been acquired improperly from his visitor.

Moffat's other argument is that the board violated the due process clause by using a boilerplate reason for its decision. According to Wolff v. McDonnell, 418 U.S. 539, 563 (1974), a prison disciplinary panel must provide "a written statement . . . as to the evidence relied upon and the reasons for the disciplinary action taken". But all this board said was: "Based on the preponderance of the evidence, the CAB finds the offender guilty." That is hard to describe as a reason; it is more a restatement of the issue that the board had to resolve. See Redding v. Fairman, 717 F.2d 1105 (7th Cir. 1983) (holding a similarly generic "reason" inadequate). It is little different from a jury's verdict "We find the defendant guilty." Still, we have held that a curt explanation may suffice when it was evident to all involved that the only question was one of credibility, so that to find the prisoner guilty at all is to reveal how the core dispute has been resolved. See Saenz v. Young, 811 F.2d 1172 (7th Cir. 1987). Indiana says that this was a simple dispute so that a declaration of the upshot suffices; Moffat says that the receipts make it a more complex dispute, and that to give a constitutionally adequate explanation the board had to reveal how it assessed their significance. We need not decide which perspective is superior, because Moffat forfeited this contention before the litigation began.

Indiana does not provide judicial review of decisions by prison administrative bodies, so the exhaustion requirement in 28 U.S.C. sec.2254(b) is satisfied by pursuing all administrative remedies. These are, we held in Markham v. Clark,

978 F.2d 993 (7th Cir. 1992), the sort of "available State corrective process" (sec.2254(b)(1)(B)(i)) that a prisoner must use. Indiana offers two levels of administrative review: a prisoner aggrieved by the decision of a disciplinary panel may appeal first to the warden and then to a statewide body called the Final Reviewing Authority. Moffat sought review by both bodies, but his argument was limited to the contention that the evidence did not support the board's decision. He did not complain to either the warden or the Final Reviewing Authority about the board's sketchy explanation for its decision. O'Sullivan v. Boerckel, 526 U.S. 838 (1999), holds that to exhaust a claim, and thus preserve it for collateral review under sec.2254, a prisoner must present that legal theory to the state's supreme court. The Final Reviewing Authority is the administrative equivalent to the state's highest court, so the holding of Boerckel implies that when administrative remedies must be exhausted, a legal contention must be presented to each administrative level. We recently applied Boerckel to another requirement that prisoners exhaust their intra-prison remedies--the one in 42 U.S.C. sec.1997e(a), see Pozo v. McCaughtry, No. 01-3623 (7th Cir. Apr. 18, 2002)--and see no reason why that approach is not equally applicable to this exhaustion requirement.

This is not to say that a prisoner must articulate legal arguments with the precision of a lawyer--though even lawyers need not do much more than hint at a federal theory. See Verdin v. O'Leary, 972 F.2d 1467 (7th Cir. 1992). If Moffat had expressed disgruntlement about the generic reason, that would have been sufficient whether or not he cited Wolff, for any complaint would have alerted the warden and the Final Reviewing Authority and allowed them to fix the problem. After all, the rationale for an exhaustion requirement is that a timely request may eliminate both the flaw and the need for federal review. The warden easily could have remanded the proceeding to the board with instructions to give a more complete explanation of its thinking. That step likely would have avoided any need to invoke sec.2254. For all we know, however, Moffat considered this possibility and chose to withhold

the point (that is, engaged in "deliberate bypass" in the terminology of Fay v. Noia, 372 U.S. 391 (1963), overruled by Keeney v. Tamayo-Reyes, 504 U.S. 1 (1992)). Better reasons from the board readily could have undercut Moffat's argument that the evidence was insufficient; if the board had spelled out its chain of conclusions and inferences, that would have exposed any flaws in Moffat's evidentiary argument. In the end, however, it does not matter whether Moffat made a deliberate decision: Fay's overruling means that even an unintentional default is conclusive. It is enough that Moffat could have raised this point and did not. That procedural default means, given Boerckel, that state remedies were not exhausted, and precludes consideration of this theory under sec.2254 unless the prisoner can show cause and prejudice-- which Moffat does not attempt to do.

Affirmed