Enrique PARDO, Petitioner–Appellant,

v.

Jason GARNETT, Respondent–Appellee.

No. 04–4087.

United States Court of Appeals, Seventh Circuit.

Submitted March 30, 2005.*

Decided March 30, 2005.

---

* After an examination of the briefs and the record, we have concluded that oral argu-

ment is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See*

Fed. R.App. P. 34(a)(2).

Enrique Pardo, Lawrence Correctional Center, Sumner, IL, pro se.

Linda Woloshin, Office of The Attorney General Criminal Appeals Division, J. Paul Hoffmann, Office of The Attorney General Civil Appeals Division, Chicago, IL, for Respondent–Appellee.

Before BAUER, POSNER, and EASTERBROOK, Circuit Judges.

## ORDER

Enrique Pardo, an inmate of Lawrence Correctional Center in Illinois, was sentenced to one year in administrative segregation, a demotion in credit-earning class, and revocation of one year of good-conduct credits when a prison adjustment committee found him guilty of security threat group activity and abuse of privileges. He petitioned for habeas corpus relief under 28 U.S.C. § 2254, arguing that there was insufficient evidence to support his conviction and that several procedural errors in the administrative hearing on the charges required reversal of his conviction. The district court denied Pardo's petition, concluding that there had been sufficient evidence to convict him and that his hearing comported with due process. We affirm.

The charges against Pardo stem from a letter he wrote in March 2000 that was intercepted by prison officials before it left the Hill Correctional Center mailroom. Pardo, who was known to prison officials to be a member of the Latin Kings gang, had addressed the letter to Keith Welch, who frequently visited another known Latin Kings member at Centralia Correctional Center. In the letter, Pardo asked Welch to let Centralia inmate "Sal," the institutional leader of the Latin Kings, know that Centralia inmate "Pito" was a "choa" (a

Spanish word for "informant"). After reading this letter, a prison investigator interviewed Pardo, who admitted writing the letter. Pardo stated that he believed that "Pito" had made negative statements about him, causing him to be transferred between prisons, and that, had he been aware of the situation earlier, he would have "taken care of it" himself. Concluding that Pardo's letter could have incited gang-related violence at Centralia, the investigator wrote a disciplinary report charging him with security threat group activity, attempted dangerous communications, and abuse of privileges.

Following Pardo's transfer from Hill to Lawrence Correctional Center that same month, a prison adjustment committee at Lawrence held a hearing on the report. The committee reviewed the report, talked to the investigator who drafted it, and read the letter that served as the basis for the charges. Pardo also addressed the committee, admitting that he wrote the letter but denying that he intended for anyone to be harmed by it. According to Pardo, the investigator had "altered the facts" disclosed in their interview; Pardo said he neither knew which inmates were gang leaders nor attributed his transfer to an informant. The committee, however, concluded that Pardo was guilty of abusing mail privileges and engaging in gang activity, and based this decision on Pardo's admission that he wrote the letter, which included "obvious references to Latin King security threat group activities," an officer's observation that Pardo had attempted to send the letter, and the shakedown slip documenting the letter's confiscation. The committee dismissed the dangerous communications charge against Pardo, stating simply that it was "not substantiated in the body of the report."

Pardo filed a grievance requesting that the disciplinary report be expunged and

his privileges reinstated, and pursued it unsuccessfully through the Illinois Department of Corrections. He then filed a petition for mandamus or habeas corpus in Illinois state court, arguing that the disciplinary committee had violated his due process rights. Specifically, he argued that the notice he received of the hearing was inadequate because it did not contain the names of witnesses, the committee's decision was not supported by some evidence, the decision failed to explain why the committee had discredited his testimony, and the hearing violated prison rules governing prisoners who have recently been transferred between facilities. The state trial court granted the state's motion to dismiss, the Illinois Appellate Court affirmed, and the Illinois Supreme Court denied leave to appeal.

In July 2003 Pardo filed a habeas petition in federal court, reasserting the due process arguments he raised in state court. The district court denied Pardo's petition, holding that due process did not require that the prison inform him of the names of witnesses in advance, and that the letter and Pardo's admission that he sent it constituted "some evidence" to support the conviction. The court also noted that Pardo could not show that the testimony allegedly discredited by the committee would have exonerated him. The rest of Pardo's claims, the court stated, relied on state law and thus were not proper subjects of a federal habeas action.

■ On appeal Pardo argues that the district court erred when it determined that his conviction was supported by "some evidence." He asserts that the disciplinary committee simply "copied the wording of the disciplinary report" without considering any evidence against him. But the evidence before a disciplinary committee need not prove a prisoner's guilt beyond all doubt; due process is satisfied so long

as there is "some evidence." *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454–55, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985); *Piggie v. Cotton*, 344 F.3d 674, 677 (7th Cir.2003). And Pardo is mistaken in asserting that the committee did not consider "any" evidence, because the committee's ruling clearly stated that it was in part "based on the observation of the reporting employee ... [and] the admission of inmate Pardo that he did write the letter." These statements alone constitute sufficient evidence to support Pardo's conviction. *See Moffat v. Broyles*, 288 F.3d 978, 981 (7th Cir.2002). Additionally, the committee had Pardo's actual letter before it to support its conclusion that the document included gang-related content. *See Sylvester v. Hanks*, 140 F.3d 713, 714–15 (7th Cir.1998).

Pardo next argues that the district court erred in concluding that the hearing notice he received satisfied due process. He argues that he should have been informed of both the witnesses against him and certain unspecified "confidential information" that he says was presented at his hearing. But the sort of notice that due process requires for prisoners in disciplinary cases includes only that information needed to prepare a defense, namely the rule allegedly violated and a summary of the facts underlying the charge. *Northern v. Hanks*, 326 F.3d 909, 910–911 (7th Cir.2003). Pardo does not dispute that he received all of this information, and nothing more was required.

■ Pardo further asserts that the district court erroneously concluded that the disciplinary committee's written decision was adequate to satisfy due process. He argues that the decision was insufficient because the committee did not explain why it rejected his testimony that he knew nothing about gang activity. But the state courts rejected Pardo's argument based solely on the procedural ground that

**652**

he had not specifically alleged what exonerating testimony he believed the state had ignored, thus running afoul of the state's requirement that he set forth all material facts necessary to support his claim. This constitutes an adequate and independent state ground barring our analysis of Pardo's due process claim. *Franklin v. Gilmore,* 188 F.3d 877, 881 (7th Cir.1999). And regardless, due process simply requires that a disciplinary committee articulate "a written statement . . . as to the evidence relied upon and the reasons for the disciplinary action taken." *Wolff v. McDonnell,* 418 U.S. 539, 563, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); *Moffat,* 288 F.3d at 981. The committee's written statement here specified the evidence it relied upon—testimony from Pardo and a guard, and the letter itself—and explained that this evidence demonstrated Pardo's attempt to use mail facilities to coordinate gang activity.

■ Finally, Pardo argues that the district court erred when it rejected his claim that his hearing violated prison rules governing prisoners who have recently been transferred between facilities. He claims that the hearing he received at Lawrence should have been more like the hearing he would have received had he been allowed to stay at Hill Correctional Center. But Pardo only argues that the hearing violated the Department of Corrections's institutional hearing rules, and violations of state law cannot be the basis for federal habeas corpus relief. *Dellinger v. Bowen,* 301 F.3d 758, 764 (7th Cir.2002).

Accordingly, the judgment of the district court is AFFIRMED.