In the

# United States Court of Appeals
## for the Seventh Circuit

No. 19-2771

CESAR O. GARCIA,

*Petitioner-Appellant,*

*v.*

DAN CROMWELL, Warden,[*]

*Respondent-Appellee.*

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 17-C-693 — **William C. Griesbach**, *Judge.*

SUBMITTED SEPTEMBER 23, 2020 — DECIDED MARCH 11, 2022

Before SYKES, *Chief Judge*, and HAMILTON and ST. EVE, *Circuit Judges.*

SYKES, *Chief Judge.* A Kenosha County jury convicted Cesar Garcia of three counts of attempted homicide, three counts of recklessly endangering safety, and one count of aggravated battery for his conduct in a drive-by shooting

---

[*] We substituted Warden Dan Cromwell for Randall Hepp as the appellee in this matter. FED. R. APP. P. 43(c).

that left one of his three victims seriously injured. Garcia's postconviction counsel moved for a new trial claiming that trial counsel's failure to request jury instructions on lesser-included offenses amounted to ineffective assistance of counsel. The trial judge denied the motion, and Garcia filed a consolidated appeal of the judgment and the postconviction order as required by Wisconsin's procedural rules. *See* WIS. STAT. § 809.30(2).

In the meantime, the state moved to dismiss the reckless-endangerment counts, acknowledging that they were lesser-included offenses of the attempted-homicide counts. The judge granted the motion and modified the judgment, and the court of appeals affirmed the judgment as modified.

Garcia then returned to the trial court with a pro se postconviction motion under section 974.06 of the Wisconsin Statutes raising two new claims of ineffective assistance of trial counsel. That was procedurally problematic. Under Wisconsin's postconviction rules, Garcia had to raise all available claims for relief in his first postconviction motion or on direct appeal. *State v. Escalona-Naranjo*, 517 N.W.2d 157, 162–63 (Wis. 1994). Section 974.06(4) bars successive postconviction motions unless the defendant can demonstrate a "sufficient reason" for failing to raise the claim earlier. *Id.*

In an appropriate case, ineffective assistance of postconviction counsel may qualify as a sufficient reason to excuse a procedural default. *State v. Romero-Georgana*, 849 N.W.2d 668, 678 (Wis. 2014). But this gateway to merits review of a defaulted claim carries a heightened pleading burden: Garcia needed to allege specific facts that, if true, would establish his postconviction counsel's ineffectiveness. *Id.* One

element of this pleading burden requires factual allegations showing that the defaulted claims were "clearly stronger" than the issues postconviction counsel chose to present. *Id.* at 679. The trial judge denied Garcia's section 974.06 motion, and the court of appeals affirmed, citing *Escalona-Naranjo* and *Romero-Georgana*.

Garcia then petitioned for federal habeas relief under 28 U.S.C. § 2254, raising the two defaulted claims of ineffective assistance of counsel. The state opposed the petition on the merits but also lodged a procedural objection, arguing that federal review is barred because the state court's decision rested on an independent and adequate state-law ground—namely, procedural default under *Escalona-Naranjo* and *Romero-Georgana*. The district judge rejected that objection but credited the state's alternative argument that even if trial counsel's performance was deficient as Garcia claimed, the mistakes were not prejudicial. The judge dismissed the petition on that basis.

We affirm on different grounds. The state appellate court rejected Garcia's second postconviction motion based on the *Escalona-Naranjo* bar and Garcia's failure to satisfy *Romero-Georgana*'s pleading standard for overcoming procedural default. Those are independent and adequate state procedural grounds, so federal review is barred unless Garcia can establish cause for and prejudice from his default. He has not done so.

## I. Background

### A. The Shooting

The drive-by shooting at the center of Garcia's case was the culmination of his months-long effort to intimidate his former girlfriend Hilda Garcia-Rojas. Before she broke up

with him, Garcia told Hilda that if she ever left him for someone else, he would kill her and her new boyfriend. When she ended their relationship and moved in with Luis Perez-Huitron, Garcia began stalking her. He followed her home from work and parked down the street from the house where she lived with Luis.

On the evening of April 16, 2008, Luis drove Hilda to her third-shift factory job in Kenosha. After dropping her off at about 10 p.m., Luis noticed Garcia's car—a beige Mazda—parked outside the factory. As Luis drove home, he saw that Garcia was following him. Because of Garcia's threats against Hilda and previous stalking behavior, Luis called his brother Arturo, explained the situation, and asked Arturo to meet him at his house. Arturo agreed, arriving at Luis's house shortly after 10 p.m. with Luis's brother-in-law Carlos Bautista-Ibenez close behind him. The three men stood outside the house next to Luis's car.

Garcia parked his car down the block and gestured toward Luis with his cell phone. He then called Luis at 10:24 p.m. Luis took the call and the two briefly argued. Garcia ended the call at 10:27 p.m. and slowly drove toward the trio. As he passed, he pulled out a gun and started shooting at them. He missed Luis and Arturo, but one of his shots struck Carlos in the upper chest.

Luis and Arturo rushed Carlos to the hospital. While on the way, they called 911 to report the crime. Thanks to rapid medical attention, Carlos survived. Doctors removed the bullet from his chest.

Kenosha police officers responded to Luis's house within minutes. They secured the scene and quickly learned that Garcia lived with his mother in nearby Racine. Officers from

the Racine Police Department drove by the home, but the beige Mazda wasn't there. They maintained surveillance and shortly after midnight reported that the beige Mazda was now parked outside the home. Some 25 officers from both departments—including a full SWAT team—responded to the home, and a lengthy standoff ensued. Officers surrounded the house and through a loudspeaker repeatedly ordered the occupants to come outside.

Garcia's mother held out for some time but eventually complied. She initially denied that Garcia was there, but within a few minutes she admitted that he was hiding in the attic. Garcia continued to refuse the officers' commands to come out, even after they fired tear gas into the house.

About five hours into the standoff, officers entered the house and took Garcia into custody. They then searched the home inside and out and found a .22-caliber revolver hidden under the back porch. In the basement they found a large number of .22-caliber spent cartridges and a wooden board riddled with bullet holes. A firearms examiner later determined that the bullet recovered from Carlos's chest was fired from the gun that was found under the porch, as were several bullets recovered from Luis's car at the scene. The markings on the spent cartridges in the basement also matched the gun. Finally, the police found Garcia's cell phone in the Mazda and confirmed that he had placed a call to Luis's phone number at 10:24 p.m.

Under further questioning by the police, Garcia's mother said that Garcia arrived home shortly before midnight that evening, woke her up, and anxiously told her that he had done something bad that night. She also stated that when the officers ordered them to come out of the house, Garcia told

her to lie and say he was not home. She recanted these statements at trial, but they were admitted into evidence through an officer's testimony.

**B.  Trial**

Garcia was charged with three counts of attempted first-degree homicide, three counts of first-degree recklessly endangering safety, and one count of aggravated battery. The case proceeded to trial in late July 2010. The state elicited the evidence we've just described, and Carlos and Luis identified Garcia as the shooter. (Arturo corroborated their account of the shooting but did not make an in-court identification.)

Garcia's defense was that that Luis, Arturo, and Carlos staged the shooting in order to frame him. As support for this theory, he relied largely on his own testimony. He told the jury that he sold illegal (i.e., stolen) firearms and that Carlos was one of his better customers. He said that sometime before the shooting, Carlos purchased the .22-caliber revolver from him—the very gun the police found hidden at Garcia's home, which matched the bullet that was removed from Carlos's chest. To explain the matching bullet cartridges in his basement, Garcia testified that he test-fired the gun to show Carlos how it worked before selling it to him. In closing argument Garcia's attorney summed up the defense theory this way: Carlos "somehow got himself shot" with his own gun, and then while Luis and Arturo were driving him to the hospital, he instructed Luis to plant the gun at Garcia's house so he wouldn't get caught with a stolen firearm.

To explain the hours-long standoff with police, Garcia testified that he hid in the attic to avoid being arrested on an outstanding warrant for a missed court date a month before

the shooting on a charge of unlawfully possessing a different .22-caliber handgun. This testimony opened the door to cross-examination about the circumstances of that arrest. Under questioning from the prosecutor, Garcia was forced to admit that he had been arrested in his car while parked outside a woman's house in possession of binoculars, a ski mask, rubber gloves, a loaded .22-caliber handgun, and ammunition—incriminating items suggestive of stalking and premeditated assault. He also acknowledged that when the police questioned him about the gun, he told them—falsely—that he had "just found" it. When the prosecutor pressed him about that falsehood, Garcia confessed "I guess I lied."

In an effort to cast doubt on the identification testimony from Luis and Carlos, Garcia's attorney presented an expert witness who testified that their accounts of the shooting were inconsistent with some of the physical evidence at the scene. But the expert's analysis relied on questionable suppositions about the positions of the shooter, the three victims, and their vehicles. Finally, in closing argument Garcia's counsel insisted that Hilda was lying about Garcia's threatening behavior and also suggested that the police manufactured the evidence of Garcia's phone call to Luis at 10:24 p.m. on the night of the shooting.

The jury convicted Garcia on all counts. The judge imposed a sentence of 40 years in prison on the attempted homicide counts, concurrent prison terms on the other counts, and 20 years of extended supervision.[1]

_____

[1] The judge structured the 40-year prison term as follows: 25 years on the first count of attempted homicide; 15 years consecutive on the second;

## C.  State Postconviction Proceedings

Represented by new appointed counsel for postconviction proceedings and appeal, *see* § 809.30(2)(e), Garcia moved for a new trial raising a claim under *Strickland v. Washington*, 466 U.S. 668 (1984), that his trial attorney was constitutionally ineffective for failing to request a jury instruction on lesser-included offenses. The judge denied the motion. As required by Wisconsin's procedural rules, direct appeal was delayed until the judge ruled on the postconviction motion, and then Garcia filed a single consolidated appeal from the judgment and the postconviction order. *See* § 809.30(2)(h), (j).

While his appeal was pending, Garcia obtained leave to reopen his postconviction motion, and the state conceded that the reckless-endangerment counts were indeed lesser-included offenses of the attempted-homicide counts. The parties stipulated to the dismissal of those counts, and the judge modified the judgment accordingly. In October 2014 the Wisconsin Court of Appeals affirmed the modified judgment and rejected Garcia's claim that his trial counsel was ineffective. The Wisconsin Supreme Court denied review.

In December 2015 Garcia returned to the trial court with a pro se postconviction motion under section 974.06 raising two new claims of ineffective assistance of trial counsel. He claimed that his attorney should not have elicited the testimony about his missed court date and arrest the month before the shooting because it opened the door to damaging

---

and 15 years on the third, consecutive to the 25-year term on the first but concurrent to the 15-year term on the second.

cross-examination about the details of that arrest. He also claimed that his attorney should have objected to statements during the prosecutor's closing argument emphasizing those details and other statements vouching for the credibility of the state's witnesses. To explain why he did not bring these claims in his first postconviction motion, Garcia blamed it on ineffective assistance by his postconviction counsel.

The trial judge denied the pro se motion without an evidentiary hearing. Garcia appealed, and in January 2017 the Wisconsin Court of Appeals summarily affirmed in a brief order. The appellate court explained that the new claims were procedurally barred under *Escalona-Naranjo* because Garcia failed to raise them in his first postconviction motion and failed to adequately plead a sufficient reason for the default. In particular, the court observed that Garcia "fail[ed] to demonstrate how and why these [new] claims are 'clearly stronger' than the issues postconviction counsel … present[ed]" in the first motion. *State v. Garcia*, No. 2016AP381, 2017 WL 218298, at *2 (quoting *Romero-Georgana*, 849 N.W.2d at 679). The Wisconsin Supreme Court denied review in April 2017.

### D. Federal Habeas Petition

A few months later, Garcia filed a pro se petition for habeas relief under § 2254 raising the same *Strickland* claims that the state courts had dismissed as barred under *Escalona-Naranjo* and *Romero-Georgana*.[2] Garcia later retained an

---

[2] Garcia also brought a *Strickland* claim based on the double-jeopardy defect he raised in his first postconviction motion stemming from trial counsel's failure to request jury instructions on lesser-included offenses. The district judge dismissed that claim at screening and rejected Garcia's

attorney, and counsel filed an amended petition but did not materially alter the nature of the claims.

The state responded with a procedural objection, noting that *Escalona-Naranjo* and *Romero-Georgana*—the cases on which the state appellate court rested its decision—are independent and adequate state rules of procedural default, so Garcia had to demonstrate cause for and prejudice from the default and could not do so. Alternatively, the state urged the court to reject Garcia's claims on the merits.

The district judge agreed that the *Escalona-Naranjo* bar was an independent and adequate state rule, but he nonetheless held that Garcia had not procedurally defaulted his federal claims. The judge reasoned that the pleading requirement announced in *Romero-Georgana* was not clearly established under Wisconsin law and, in any event, was too enmeshed with the merits of the *Strickland* ineffectiveness inquiry to be considered an independent state procedural rule.

Moving to plenary review of the merits of Garcia's claims, the judge ruled that trial counsel "arguably" had strategic reasons to elicit Garcia's testimony about his missed court date and prior arrest and to refrain from objecting to at least some of the prosecutor's statements in closing argument. But he found deficiencies of a constitutional dimension in other aspects of trial counsel's performance—specifically, counsel's failure to object to the prosecutor's inquiry into the specific details of the prior arrest and the prosecutor's closing argument "portray[ing] Garcia as a

---

later attempt to revive it. Garcia does not challenge that decision on appeal.

predatory criminal stalking a woman and planning an unrelated crime." The judge held, however, that counsel's failure to object was not prejudicial given the overwhelming evidence of Garcia's guilt and his implausible defense strategy, which was premised on a "concocted" story that "made no sense." The judge accordingly denied the petition and declined to grant a certificate of appealability.

Garcia then asked this court for a certificate of appealability on his two *Strickland* claims. *See* 28 U.S.C. § 2253(c). A motions judge granted that request and also ordered the parties to address the issue of procedural default.

## II. Discussion

We begin as we must with procedural default. "Merits review of a habeas claim is foreclosed if the relevant state court's disposition of the claim rests on a state law ground that is adequate and independent of the merits of the federal claim." *Triplett v. McDermott*, 996 F.3d 825, 829 (7th Cir. 2021). When a state court rejects a prisoner's challenge to his conviction on an independent and adequate state-law ground, "principles of comity and federalism dictate against upending the state-court conviction" and the federal claim is deemed procedurally defaulted. *Thomas v. Williams*, 822 F.3d 378, 384 (7th Cir. 2016). Unless the petitioner can establish "cause" for and "prejudice" from the default, "federal habeas review is at an end." *Johnson v. Thurmer*, 624 F.3d 786, 789 (7th Cir. 2010). We review questions of procedural default de novo. *Id.*

The analysis here requires some unpacking of the state procedural regime for criminal appeals and postconviction proceedings. As we've noted in prior cases, "the criminal appeal process in Wisconsin is unusual" and characterized

by some "counterintuitive" complexity. *Carter v. Buesgen*, 10 F.4th 715, 717–18 (7th Cir. 2021); *see also Morales v. Boatwright*, 580 F.3d 653, 656–57 (7th Cir. 2009); *Huusko v. Jenkins*, 556 F.3d 633, 634–35 (7th Cir. 2009). The complexity is largely attributable to the state's decision to "combine[] some aspects of direct and collateral review by allowing post-judgment, but pre-appeal, motions to raise matters outside the trial record." *Huusko*, 556 F.3d at 634–35.

## A. Postconviction Procedure in Wisconsin

After a conviction and sentencing in a Wisconsin criminal case, "a defendant's first avenue of relief is a postconviction motion under § 974.02" of the Wisconsin Statutes. *Page v. Frank*, 343 F.3d 901, 905 (7th Cir. 2003). In contrast to the practice in many other jurisdictions, claims of ineffective assistance of counsel may—and, as we shall see, usually *must*—be raised at this postjudgment, preappeal stage of the proceedings. *Id.*; *see also Romero-Georgana*, 849 N.W.2d at 677–78; *State v. Lo*, 665 N.W.2d 756, 766 (Wis. 2003); *Escalona-Naranjo*, 517 N.W.2d at 158–59.

We recently sketched the steps that precede a section 974.02 motion. *Carter*, 10 F.4th at 717–18. In brief, the defendant must file a notice of intent to pursue postconviction relief within 20 days of judgment; the clerk of court then notifies the public defender's office and forwards a copy of the judgment and certain other records; and the public defender's office then orders transcripts and appoints counsel to represent the defendant in postconviction proceedings and on appeal. § 809.30(2)(b), (c), (e). Within 60 days, the clerk of court sends a copy of the court record to postconviction counsel, and the court reporter has the same 60-day window to file and serve the transcripts (unless the deadline is ex-

tended). § 809.30(2)(g). A postconviction motion or notice of appeal ordinarily must be filed within 60 days of receipt of the court record or transcripts, whichever is later. § 809.30(2)(h). This deadline, too, can be extended. *See Carter*, 10 F.4th at 717–18 (discussing the systemic delays in Wisconsin's unique postconviction process).

Importantly, the defendant "shall file a motion for post-conviction … relief *before* a notice of appeal is filed unless the grounds for seeking relief are sufficiency of the evidence or issues previously raised." § 809.30(2)(h) (emphasis added); *see also* WIS. STAT. § 974.02(2). The point of this requirement is to give the trial court the opportunity to address all claims of error and then to consolidate all claims for relief in a single appeal. Accordingly, as a general matter, "the § 974.02 postconviction motion operates as a prerequisite to accessing the state's *direct* appeal process." *Carter*, 10 F.4th at 718; *see also Page*, 343 F.3d at 906.

Later on in the process, "[a]fter the time for appeal or postconviction remedy provided in [section] 974.02 has expired," the defendant may proceed under section 974.06, which permits a prisoner to move the sentencing court to "vacate, set aside or correct the sentence" on "the ground that the sentence was imposed in violation of the U.S. [C]onstitution." WIS. STAT. § 974.06(1). This is Wisconsin's equivalent to a motion for collateral relief under 28 U.S.C. § 2255. *Lo*, 665 N.W.2d at 760; *Escalona-Naranjo*, 517 N.W.2d at 160.

At first glance section 974.06 seems quite permissive. It states that the motion "is a part of the original criminal action" and "may be made at any time." § 974.06(2). But subsection (4) contains a critical restriction:

> All grounds for relief available to a person under this section must be raised in his or her original, supplemental or amended motion. Any ground finally adjudicated or not so raised, or knowingly, voluntarily and intelligently waived in the proceeding that resulted in the conviction or sentence or in any other proceeding the person has taken to secure relief may not be the basis for a subsequent motion, unless the court finds a ground for relief asserted which for sufficient reason was not asserted or was inadequately raised in the original, supplemental or amended motion.

§ 974.06(4).

This bar on successive motions isn't limited to successive *section 974.06 motions*. The Wisconsin Supreme Court has interpreted subsection (4) more broadly: a prisoner may not raise in a section 974.06 motion a federal constitutional issue that was raised *or could have been raised* in a postconviction motion under section 974.02 or on direct appeal. *Escalona-Naranjo*, 517 N.W.2d at 162. The upshot is that a defendant must raise all available claims for relief, including *Strickland* claims, at the earliest opportunity—that is, in a section 974.02 motion or on direct appeal. *Id.* at 162. Failure to do so bars relief under section 974.06 unless the defendant can establish a "sufficient reason" to excuse the default. *Id.* at 162–63.

Ineffective assistance of postconviction counsel can be a "sufficient reason" to excuse a prisoner's failure to bring a claim earlier. *State v. Allen*, 786 N.W.2d 124, 139 (Wis. 2010). But the mere suggestion that postconviction counsel was

ineffective does not by itself open the door to merits review of a defaulted claim. Instead, a prisoner must provide specific, nonconclusory factual allegations explaining why his postconviction counsel was ineffective. *Id.* at 139–40. If ineffective assistance of postconviction counsel is adequately pleaded, the trial court must then provide an evidentiary hearing and "perform the necessary factfinding function and directly rule on the sufficiency of the reason." *Id.* at 139 (quotation marks omitted). In contrast, if a petitioner fails to allege "specific facts that, if proved, would constitute a sufficient reason," the trial court will "summarily deny" the section 974.06 motion without an evidentiary hearing. *Id.* at 140. That was the case in *Allen*, where the prisoner's motion was insufficient to overcome the *Escalona-Naranjo* bar because it failed to "allege any facts that, if proved, would constitute deficient performance" by postconviction counsel or "any facts that, if proved, would constitute prejudice." *Id.* at 139.

The Wisconsin Supreme Court's decision in *Romero-Georgana* builds on *Allen* and *Escalona-Naranjo* by elaborating the pleading threshold necessary to justify holding an evidentiary hearing on a prisoner's claim that ineffective assistance of postconviction counsel is a sufficient reason to excuse his procedural default. The court held that "[t]o move beyond the initial prerequisites of Wis. Stat. § 974.06(4) and *Escalona-Naranjo*, and to adequately raise a claim for relief, a defendant must allege sufficient material facts—*e.g.*, who, what, where, when, why, and how—that, if true, would entitle [him] to the relief he seeks." *Romero-Georgana*, 849 N.W.2d at 678 (quotation marks omitted). Echoing what it said in *Allen*, the court explained that if a prisoner satisfies this pleading standard, the trial court may hold an eviden-

tiary hearing and "directly rule on the sufficiency of the reason." *Id.* (quotation marks omitted). If, on the other hand, the prisoner's motion fails to satisfy this pleading threshold, it must be denied. *Id.*

The "why" requirement is particularly relevant here. To adequately allege that ineffective assistance of postconviction counsel qualifies as a "sufficient reason" to excuse a procedural default, a prisoner must allege why the claims he now wants to raise are "clearly stronger than the claims actually raised." *Id.* at 683. Then the trial court can compare the new theories of trial counsel's ineffectiveness relative to those theories that postconviction counsel already pursued. *Id.* at 679. Much like it did in *Allen*, the Wisconsin Supreme Court concluded in *Romero-Georgana* that the trial court correctly denied an evidentiary hearing because the prisoner failed to allege how and why the claim that he wanted to raise was clearly stronger than the claim that his postconviction counsel actually raised. *Id.* at 685–86.

To summarize, under section 974.06(4) and *Escalona-Naranjo*, all available claims for postconviction relief must be raised in a first postconviction motion under section 974.02 or on direct appeal. The statute preserves a narrow gateway to merits review of a defaulted federal claim. To pass through it, a prisoner must establish a "sufficient reason" for not bringing the claim earlier. Ineffective assistance of postconviction counsel may be a sufficient reason, but *Allen* and *Romero-Georgana* establish an additional procedural requirement—in the form of a special pleading burden—when a prisoner's section 974.06 motion raises ineffective assistance of postconviction counsel as a reason to excuse his procedural default.

## B. Independent and Adequate State Ground

With the legal background in place, we can return to the question whether the Wisconsin Court of Appeals "clearly and expressly" relied on a state procedural bar that is both "independent of the federal question and adequate to support the judgment." *Lee v. Foster*, 750 F.3d 687, 693 (7th Cir. 2014) (quotation marks omitted). We conclude that it did.

"A state law ground is independent when the court actually relied on the procedural bar as an independent basis for its disposition of the case." *Thompkins v. Pfister*, 698 F.3d 976, 986 (7th Cir. 2012) (quoting *Kaczmarek v. Rednour*, 627 F.3d 586, 592 (7th Cir. 2010)). There's no ambiguity here about the basis of the state court's decision: the Wisconsin Court of Appeals unequivocally relied on the *Escalona-Naranjo* procedural bar and Garcia's failure to satisfy the *Romero-Georgana* pleading requirement. Garcia does not argue otherwise. The dispute centers on whether the rules announced in these two decisions are truly independent of the merits.

The district judge acknowledged that the *Escalona-Naranjo* bar is an independent procedural rule, but he suggested that *Romero-Georgana*—and in particular, the "clearly stronger" requirement—is really just a gloss on the *Strickland* framework for claims of ineffective assistance of counsel. This reflects a misunderstanding of Wisconsin's postconviction procedures. The *Romero-Georgana* pleading requirement implements the *Escalona-Naranjo* procedural regime.

Garcia proceeds under the same basic misunderstanding, claiming that the Wisconsin Court of Appeals thought that *Romero-Georgana* "somehow triggered" the *Escalona-Naranjo* bar. That has it backward. The baseline under section 974.06(4) is that Garcia's new claims for ineffective assistance

of trial counsel were procedurally barred under *Escalona-Naranjo* because he did not raise them previously in his section 974.02 motion. It was up to him, under *Allen* and *Romero-Georgana*, to trigger the exception to the bar by first satisfying the pleading burden to invoke ineffective assistance of postconviction counsel as a sufficient reason to excuse his default.

Garcia also argues that *Romero-Georgana*'s pleading standard is too entangled with the merits of his federal claims to be an independent basis for the state court's decision. We rejected a similar argument in *Triplett*, an analogous case that addressed Wisconsin's procedural regime for postconviction motions seeking to withdraw a guilty plea based on ineffective assistance of counsel. 996 F.3d at 829–30. In *Triplett* the Wisconsin Court of Appeals had affirmed the denial of the defendant's ineffectiveness claim because he failed to satisfy the pleading requirement established in *State v. Bentley*, 548 N.W.2d 50, 55 (Wis. 1996), for postconviction plea-withdrawal motions based on ineffective assistance of counsel. *Triplett*, 996 F.3d at 829–30. We concluded that the federal claim was procedurally defaulted because the state court of appeals "focused entirely on the adequacy of Triplett's pleading; nowhere is there a finding as to the merits of his ineffectiveness claim." *Id.* at 830.

The same is true here. Indeed, the *Romero-Georgana* pleading rule rests in part on the pleading requirement announced in *Bentley*. *See Romero-Georgana*, 849 N.W.2d at 678. Here, as in *Triplett*, the state court of appeals focused entirely on Garcia's failure to carry his pleading burden under *Romero-Georgana*: the court summarily affirmed Garcia's claims as "procedurally barred," citing *Escalona-*

*Naranjo* and *Romero-Georgana*, and never engaged in a merits analysis of the defaulted *Strickland* claims.

The court's reliance on *Escalona-Naranjo* and *Romero-Georgana* was also "adequate" to support its judgment. Adequacy in this context requires that the state-law ground be "firmly established and regularly followed" and not applied in a way that imposes "novel and unforeseeable requirements without fair or substantial support in prior state law" or "discriminate[s] against claims of federal rights." *Clemons v. Pfister*, 845 F.3d 816, 820 (7th Cir. 2017) (quotation marks omitted) (alteration in original). We have little difficulty concluding that *Escalona-Naranjo* and *Romero-Georgana* are "firmly established and regularly followed" rules of Wisconsin postconviction procedure. The bar on successive postconviction motions is embedded in section 974.06(4) and is regularly followed by Wisconsin courts. *See, e.g.*, *Perry v. McCaughtry*, 308 F.3d 682, 690 (7th Cir. 2002). And *Allen* and *Romero-Georgana* firmly establish what a prisoner must do at the pleading stage to invoke ineffective assistance of postconviction counsel as a reason to excuse a procedural default.

## C. Cause and Prejudice

Garcia's default precludes federal habeas review of his new *Strickland* claims unless he can establish cause for and prejudice from the default. *Thompkins*, 698 F.3d at 986. Cause requires a showing of "some type of external impediment" that prevented him from presenting his claims. *Id.* at 987 (quotation marks omitted). Garcia has not identified any external impediment that prevented him from satisfying the *Romero-Georgana* pleading threshold necessary to obtain relief from the *Escalona-Naranjo* bar. He simply repeats his

complaints about his postconviction counsel. But errors by counsel in the first round of postconviction proceedings cannot serve as cause to excuse Garcia's *own* default in the second.[3]

Even if we assume for the sake of argument that Garcia had identified a cause external to him to excuse his default, he has not established prejudice. Looking through postconviction counsel's performance to the alleged errors of trial counsel, we do not see any reasonable probability of a different result had trial counsel avoided the subject of Garcia's prior arrest or objected to the parts of the prosecutor's closing argument that he now identifies as problematic.

On this point we agree with the district judge: the evidence of Garcia's guilt was overwhelming. Carlos and Luis identified him as the shooter. Hilda testified about his jealousy, stalking, and threats, which established a compelling motive for the crimes. Uncontradicted physical evidence corroborated the eyewitness identifications—most notably, the forensic examiner's testimony about the match between the handgun found under Garcia's porch, the bullet recovered from Carlos's chest, the bullets recovered from Luis's car at the scene, and the empty casings in Garcia's basement. Garcia's cell phone confirmed that he made a call to Luis's phone moments before the shooting began. Finally, Garcia's

---

[3] A claim of ineffective assistance must be properly raised in state court "before it can suffice on federal habeas relief as 'cause' to excuse the default of another claim (even if that other claim is also ineffective assistance of counsel)." *Dellinger v. Bowen*, 301 F.3d 758, 766 (7th Cir. 2002) (citing *Edwards v. Carpenter*, 529 U.S. 446, 452–54 (2000)). "If the second claim of ineffective assistance of counsel is itself defaulted, the petitioner will be fully defaulted." *Id.*

defense theory—that Carlos "somehow got himself shot" with his own gun and then told Luis and Arturo to plant the gun at Garcia's house—was not remotely plausible.

Garcia offers no meaningful response to this mountain of evidence against him. He focuses on the prejudicial effect of the prior-arrest evidence and the prosecutor's remarks in the abstract and makes little effort to examine whether the alleged errors by trial counsel were prejudicial on the specific facts of this case.

Because the state appellate court's decision rests on an independent and adequate state-law ground, Garcia's *Strickland* claims regarding his trial counsel's performance are defaulted. He has not established cause for and prejudice from the default, so federal merits review of the claims is foreclosed.

AFFIRMED